NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| ANDREW GOLDSMITH, | : | **Civil Action No. 17-4728 (SRC)** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| WEIBO CORPORATION, GAOFEI | : | |
| WANG, and HERMAN YU, | : | |
| | : | |
| Defendants. | : | |

---

**CHESLER**, District Judge

This is a securities fraud class action filed on behalf of individuals and entities who bought NASDAQ-traded shares in the Chinese social media company known as Weibo. It comes before the Court on the motion brought by Defendants Weibo Corporation ("Weibo"), Gaofei Wang and Herman Yu (collectively, "Defendants") to dismiss the Consolidated Class Action Complaint (hereinafter, the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Lead Plaintiff Chen Qiwei ("Plaintiff") has opposed the motion. The Court has considered the papers filed by the parties and, pursuant to Federal Rule of Civil Procedure 78, will rule on the motion without oral argument. For the reasons expressed below, Defendants' motion will be granted.

## I.   BACKGROUND

Plaintiff brings this putative class action for securities fraud on behalf of investors who purchased Weibo American Depository Shares ("ADS") between April 17, 2014 and June 21,

2017 (the "Class Period"). Plaintiff and the putative class members purchased Weibo securities during the Class Period at prices they claim were artificially inflated as a result of allegedly misleading statements and omissions made by Weibo, Wang and Yu in public filings with the Securities and Exchange Commission ("SEC"). Plaintiff claims that Defendants knowingly misled investors to believe that Weibo was operating in compliance with Chinese laws and regulations concerning a licensing requirement for companies engaged in internet transmissions. Plaintiff further claims that when the public became aware that Weibo was not in compliance with the law, Weibo's stock price dropped, causing Weibo investors to sustain a loss. The Complaint seeks relief pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. (the "Exchange Act").

The factual summary below is based on the Complaint's allegations and on documents attached to or referenced in the Complaint. The facts are taken as true for purposes of this motion to dismiss only.

### A.  The Parties

Defendant Weibo is a company engaged in the internet transmission of written and multimedia content in the People's Republic of China ("PRC" or "China"). According to the Complaint, Weibo "operates as a social media platform for people to create, distribute, and discover Chinese-language content." (Compl., ¶ 2.) In this regard, Weibo has been described as the "Chinese Twitter." (Id.) The various content disseminated by Weibo is contributed, or posted, to Weibo by users of the platform and by platform partners. (Id.) Weibo's business is comprised of three segments: user; advertising and marketing; and platform partners. The user segment consists of, among others, self-expression products, social products, and games. Weibo users include individuals, celebrities, media outlets, businesses, charities and government

agencies. The advertising and marketing segment, through which Weibo generates the majority of its revenue, allows customers to purchase ad space on Weibo pages. In the platform partners segment, third-party developers of mobile applications, games, and other products share their content on Weibo's platform.

Weibo was incorporated in 2010 in the Cayman Islands, and it maintains its principal place of business in Beijing. Though it was once a fully-owned subsidiary of SINA, a leading Chinese internet media company, Weibo has been a stand-alone company since 2014, the year it completed its initial public offering in the American securities market. On April 17, 2014, Weibo began selling and trading its ADS in the United States on the NASDAQ Global Select Market.

Weibo itself is structured as a "variable interest entity," or "VIE", comprised of a chain of fully-owned entities it uses to conduct various aspects of its business. One of these entities is Weibo Internet Technology (China), the entity Weibo uses to conduct its business in the PRC. Weibo operates its online platform in China through Beijing Weimeng Technology Co., Ltd. ("Weimeng"). Weimeng is the entity which may hold and obtain the various permits and licenses needed for Weibo's PRC operations.

In addition to Weibo, this lawsuit names as defendants Gaofei Wang and Herman Yu, two individuals who held official positions in Weibo during the relevant time period. Individual Defendant Wang is and was at all relevant times Weibo's Chief Executive Officer. Individual Defendant Yu served as the company's Chief Financial Officer from March 2015 to September 2017.

Lead Plaintiff Qiwei is an individual who invested in Weibo during the relevant time period. According to his Certification of August 5, 2017, he made several purchases of Weibo

ADS during the Class Period. He claims he bought the shares at artificially inflated prices due to Defendants' misrepresentations and omissions.

### B. PRC Regulations Requiring a License for Internet Transmission

Weibo's core business operations within the PRC subject the company to extensive regulations on various matters, including foreign ownership, licensing, and internet-broadcast content. The essence of the fraud alleged in this case concerns certain regulations that require a company to obtain a government-issued license before it may engage in the internet transmission of audio-visual programs in the PRC. The Court reviews the relevant regulations briefly.

To begin, in 2004, China's State Administration of Radio, Film and Television promulgated a set of rules which require all persons and/or entities engaging in internet broadcasting activities to obtain an audio-video program transmission license (hereinafter "AVPT License"). Then, on December 20, 2007, the State Administration of Radio, Film and Television and the Ministry of Industry and Information Technology jointly issued a set of rules known as "Circular 56." Circular 56 reiterated and strengthened the licensing requirement set forth in the 2004 regulations. As quoted in the Complaint, Circular 56 provides, in relevant part, as follows:

> Article 2: These Provisions shall apply to the provision of audio-visual program service via internet (including mobile internet, hereinafter referred to as internet) within the borders of the People's Republic of China. The term "internet audio-video program service" as mentioned in these Provisions refers to activities of making, redacting and integrating audio-visual programs, providing them to the general public via internet, and providing services for other people to upload and spread audio-visual programs.

> Article 7: To engage in internet audio-visual program service, one shall, in accordance with these Provisions, obtain the Permit for Spreading Audio-Visual Programs via Information Network (hereinafter referred to as Permit) issued by the competent department of radio, film and television, or handle the archive-filing formalities. **No entity or individual may**

> **engage in internet audio-video program service without obtaining the Permit issued by the competent department of radio, film and television, or handling the archive-filing formalities.**

(Compl., ¶ 47 and Ex. A) (emphasis added).

Importantly, Circular 56 restricts eligibility for the AVPT License. Under Circular 56, the AVPT License may be obtained only by companies that are *exclusively* state-owned or state controlled. As to this criterion for qualification, it states:

> Article 8: An applicant for engaging in internet audio-visual program service shall simultaneously satisfy the following requirements:
>
> 1.  It has the corporate capacity, is an exclusive state-owned entity or a state-controlled entity, and has not committed any violation within three years prior to the date of application . . .

(Compl., Ex. A). The PRC government thereafter clarified that a limited exception to this restriction would be made for entities that were already operating an internet broadcasting business prior to the issuance of the Circular 56 regulation. Such companies could also apply for an AVPT License, even if not exclusively state-owned or state-controlled.

Further tightening the licensing requirements for internet broadcasting activities, Circular 56 prohibits a licensed company from providing services on behalf of an unlicensed entity. It provides:

> Article 14: . . . No licensed entity may provide fee collection services, signal transmission, server hosting and other related financial and technical services in connection with internet audio-visual program services to any entity on behalf of or for the benefits of any unlicensed or unregistered third party.

(Compl., ¶ 48 and Ex. A.)

The third set of rules relevant to Plaintiff's claims is known as Circular 196. On December 16, 2016, the PRC's newly established State Administration of Press, Publication, Radio, Film and Television ("SAPPRFT") promulgated Circular 196. Circular 196 is expressly

directed to "strengthening [the] management of audio-visual program disseminating on Weibo, WeChat and other online social platforms." (Compl., Ex. C.) Circular 196 states in relevant part that entities that disseminate audio-video programs through the Weibo platform must themselves obtain an AVPT License. It further states that if such broadcasters do not have their own license, the "network platform" – that is, Weibo – "shall be the responsible entity" of the program service and "act as a gatekeeper for program content and other management responsibilities." (Id.)

### C. Weibo's Public Statements About the Regulations

According to the Complaint, Weibo stated throughout the Class Period that it "was not required to have a license" and "gave investors the false impression that Weibo was in full compliance with Chinese laws and regulations by operating through third-party websites." (Compl., ¶¶ 52-53.) Weibo first made such statements, the Complaint alleges, on April 17, 2014, the first day of the Class Period. On that date, Weibo filed its prospectus in connection with the company's initial public offering (hereinafter, the "2014 Prospectus"). The same allegedly misleading statements also appear in Weibo's three Form 20-F annual reports filed with the SEC during the Class Period (the annual reports for 2014, 2015 and 2016). The Complaint quotes the pertinent sections from all four SEC filings at issue. To paraphrase, in each filing Weibo conveys three key pieces of information about the AVPT License: (1) Following a thorough synopsis of the licensing regulations in effect at the time (the 2004 rules and Circular 56 in all four above-mentioned filings, plus Circular 196 in the 2016 Form 20-F report), Weibo expressly draws attention to the PRC's AVPT License requirement; (2) Weibo discloses that it does not hold and is not qualified to obtain the required AVPT License; and (3) Weibo states that the programs posted to Weibo are delivered through third-party websites, each of which does hold the AVPT License. While the relevant portions of Weibo's SEC filings are lengthy, the language bears

quoting in full because the statement, as a whole, constitutes the alleged fraud on investors on which Plaintiff's entire case is based.

The 2014 Prospectus as well as the Form 20-F reports for 2014, 2015 and 2016 each contain a section entitled "**Regulations on Broadcasting Audio/Video Programs through the Internet**." (Compl., ¶ 53; Musoff Cert. Ex. B at 146) (emphasis in original). In the 2014 Prospectus, that section reads as follows:

>The Rules for the Administration of Broadcasting of Audio/Video Programs through the Internet and Other Information Networks, promulgated by the State Administration for Radio, Film and Television in 2004, apply to the launch, broadcasting, aggregation, transmission or download of audio/video programs via televisions, mobile phones and the internet and other information networks. **Anyone who wishes to engage in internet broadcasting activities must first obtain an audio/video program transmission license issued by the State Administration for Radio, Film and Television and must operate pursuant to the scope as provided in such license.** Foreign invested enterprises are not allowed to engage in these activities.

>On December 20, 2007, the State Administration for Radio, Film and Television and MIIT jointly issued the Rules for the Administration of Internet Audio and Video Program Services, commonly known as Circular 56, which came into effect as of January 31, 2008. **Circular 56 reiterates the requirement set forth in the earlier rules that online audio/video service providers must obtain an internet audio/video program transmission license from the State Administration for Radio, Film and Television. Furthermore, Circular 56 requires all online audio/video service providers to be either wholly state-owned or state-controlled companies.** According to relevant official answers to press questions published on the website of State Administration for Radio, Film and Television on February 3, 2008, officials from the State Administration for Radio, Film and Television and the MIIT clarified that online audio/video service providers that already had been operating lawfully prior to the issuance of Circular 56 may re-register and continue to operate without becoming state-owned or controlled, provided that such providers have not engaged in any unlawful activities. This exemption will not be granted to online audio/video service providers established after Circular 56 was issued. These policies have been reflected in the Application Procedure for Audio/Video Program Transmission License. **Failure to obtain the internet audio/video program transmission license may subject an online audio/video service provider to various**

> **penalties, including fines of up to RMB30,000 ($4,956), seizure of related equipment and servers used primarily for such activities and even suspension of its online audio/video services.**
>
> **Weimeng is not qualified to obtain an internet audio/video program transmission license under the current legal regime as it is not a wholly state-owned or state-controlled company, nor did it begin operation prior to the issuance of Circular 56. Weimeng plans to apply for an internet audio/video program transmission license when it is feasible to do so. Currently, all the audio/video programs posted on our platform are delivered through third-party websites, each of which has an internet audio/video program transmission license.**

(Compl., ¶ 53; Musoff Cert. Ex. B at 146-47) (emphasis added).

The Form 20-F annual reports filed by Weibo with the SEC for fiscal years 2014, 2015, and 2016 contain almost identical language to the above-quoted summary of Circular 56.

(Compl., ¶¶ 57, 63, 69; see also Musoff Cert. Ex. A at 64, Ex. E at 66, Ex. F at 61.) With respect to regulations governing internet broadcasting activities, Weibo's Form 20-F for 2016 adds the following statement concerning Circular 196:

> On December 16, 2016, the State Administration of Press, Publication, Radio, Film and Television of the PRC (SAPPRFT) issued the Rules for the Administration of Video and Audio Programs on Weibo, WeChat and other Social Media Platforms, or Circular 196. Circular 196 requires that any organizations that provide online streaming through social media platforms such as Weibo or WeChat should obtain an internet audio/video program transmission license. For organizations and individuals that do not hold [the] license, the hosting social networking platform shall be responsible for supervising the content of the posted programs, and the scope of the programs must not exceed the scope stated on the platform's audio/video program transmission license. Similarly, film and TV dramas broadcasted through social media are required to obtain a license for public airing, and social medial platforms are not allowed to repost user-generated video or audio programs featuring political news.

(Compl., ¶ 69; Musoff Cert. Ex. A at 65.)

The 2014 Prospectus and the Form 20-F annual reports for 2014, 2015, and 2016 also disclosed various "**Risks Relating to Doing Business in China**" – again, emphasizing the

heading in bold print. (Musoff Cert. Ex. A at 27, Ex. B at 38, Ex. E at 29, Ex. F at 26) (emphasis

in original). Among the disclosures, Weibo expressly warns of the risk of operating without the

AVPT License in the PRC. In the 2014 Prospectus and in each of the annual reports filed with

the SEC during the Class Period, Weibo repeats that it does not hold the AVPT License. Weibo's

disclosures also specify that the PRC government could impose penalties for a failure by Weibo

to obtain the necessary permits and licenses, including, in particular, the AVPT License. As to

the risk and consequences of operating without the required licenses, Weibo's SEC filings state

as follows:

> **We may be adversely affected by the complexity, uncertainties and**
> **changes in PRC licensing and regulation of internet businesses.**
>
> The PRC government extensively regulates the internet industry,
> including the licensing and permit requirements pertaining to companies
> in this industry. Internet-related laws and regulations in China are
> relatively new and evolving, and their interpretation and enforcement
> involve significant uncertainty. As a result, it may be difficult to determine
> what actions or omissions may be deemed to be violations of applicable
> laws and regulations in certain circumstances.
>
> Our VIE [Weimeng] holds the Internet Content Provision License
> and the Online Culture Operating Permit that are necessary for operating
> our current business in China. However, we cannot assure you that we
> have obtained all the permits or licenses required for conducting our
> business in China or will be able to maintain our existing licenses or
> obtain any new licenses if required by any new laws or regulations. . . . **In**
> **addition, companies engaging in internet broadcasting activities must**
> **first obtain an audio/video program transmission license. See "PRC**
> **Regulation—Regulations on Broadcasting Audio/Video Programs**
> **through the Internet" for more details. Currently, all the audio/video**
> **programs posted on our website are delivered through third-party**
> **websites. Weimeng is not qualified to obtain the internet audio/video**
> **program transmission license under the current legal regime** as it is
> not a wholly state-owned or state-controlled company and it was not
> operating prior to the issuance of the Rules for the Administration of
> Internet Audio and Video Program Services, commonly known as Circular
> 56. **Weimeng plans to apply for an internet audio/video program**
> **transmission license when feasible to do so.** Further we many need to
> apply for an internet news publication license. See "Item 4. B. Information

on the Company—Business Overview—Regulation—Regulations on Internet News Dissemination." **If we fail to obtain such licenses or any additional licenses required by new laws and regulations in a timely manner or at all, we could be subject to liabilities, penalties and operational disruption.**

(Compl., ¶¶ 52, 56, 62, 68; Musoff Cert. Ex. A at 31, Ex. B at 41, Ex. E at 32, Ex. F at 29)

(emphasis added).

### D. The Individual Defendants' Statements

Weibo's Form 20-F annual reports were accompanied by certifications signed by Individual Defendants Wang and Yu, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"). In each of the SOX certifications, Wang and Yu attested that the respective annual report of the corporation "does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." (Compl., ¶¶ 59, 65, 71.)

### E. The PRC Cites Weibo for Operating Without the Required License

On June 22, 2017, Weibo issued a press release entitled "Weibo Announces Receipt of a SAPPRFT Notice." (Compl., ¶ 73; Musoff Cert. Ex. G.) The press release announced that the PRC government authority on broadcasting activities, SAPPRFT, had taken action against Weibo to enforce the AVPT License regulations. The press release disclosed that the SAPPRFT had issued a public notice requesting local authorities in the PRC to take measures to suspend the internet broadcasting services of various companies, including, specifically, Weibo, for failure to hold the required AVPT License. The press release stated that the SAPPRFT had

> requested the local competent authorities to take measures to suspend several companies' video and audio services due to their lacking of an internet audio/video program transmission license and posting of certain

> commentary programs with content in violation of government regulations on their sites, and Weibo is named as one of these companies.
>
> The Company [Weibo] is communicating with the relevant government authorities to understand the scope of the notice. It intends to fully cooperate with the relevant authorities. The Company will also evaluate the impact of this notice on its operations and its administrative options.

(Compl., ¶ 73; Musoff Cert. Ex. G.)

According to the Complaint, the public first became aware of Weibo's non-compliance with the AVPT License regulations upon the disclosures made in Weibo's June 22, 2017 press release. It avers that, on this news, Weibo's share price fell $4.71 per share, from its closing price of $76.96 on June 21, 2017 to $72.25 per share at the close of trading on June 22, 2017. This drop represented a loss of over 6% in the value of Weibo, "severely damaging investors," according to the Complaint. (Compl., ¶ 74.)

### F. Investors File Suit Against Weibo

The securities fraud lawsuit was filed in this Court on June 27, 2017. In the original Complaint, named Plaintiff Andrew Goldsmith claimed that he and a putative class of other investors purchased Weibo securities at an artificially inflated price as a result Defendants' misrepresentations and omissions concerning two matters: Weibo's non-compliance with the AVPT License requirement and information in Weibo's 2016 Form 20-F regarding platform postings containing material or commentary in violation of the PRC's content restrictions. A second class action lawsuit arising from substantially similar allegations was filed on August 3, 2017 by Plaintiff Feng Chen. Thereafter, the Court consolidated the Goldsmith and Chen actions and appointed Chen Qiwei as Lead Plaintiff in this consolidated action, pursuant to the Exchange Act and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).

### G. The Complaint Before the Court

On November 27, 2107, Lead Plaintiff Qiwei filed the Consolidated Class Action Complaint, which is the subject of the motion to dismiss currently before the Court. The Complaint alleges that throughout the Class Period, in the various SEC filings made by Weibo and reviewed in the foregoing synopsis by the Court, Defendants "gave investors the false impression that Weibo was in compliance with Chinese laws and regulations by operating through third-party websites[.]" (Compl., ¶¶ 52, 56, 62, 68.) According to Plaintiff, these public statements were materially false and misleading for their "failure to disclose a true and accurate picture of Weibo's compliance with PRC regulations" as it related to Weibo's operation without possessing the required AVPT License. (Id., ¶ 99.) Plaintiff further alleges that "Defendants' materially misleading statements and omissions concealed a risk concerning Weibo's non-compliance with PRC regulation[s] . . . [which] materialized in the form of PRC violations and fines." (Id.; ¶ 103.) According to the Complaint, Defendants' misleading statements and omissions artificially inflated the price of Weibo shares and caused Plaintiff other purchasers of Weibo securities to sustain a loss when the share price dropped upon Weibo's announcement of the SAPPRFT action against Weibo. Unlike the original complaints, the Consolidated Complaint no longer alleges that Defendants violated securities fraud laws based on statements concerning the posting of PRC-prohibited content to the Weibo platform.

The Complaint before the Court asserts two claims for relief. Count I asserts a securities fraud claim against all Defendants for violation of § 10(b) of Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5. Count II asserts a claim against Individual Defendants Wang and Yu for control person liability, pursuant to Exchange Act § 20(a), 15 U.S.C. § 78t(a).

## II. DISCUSSION

### A. Standard of Review

Defendants seek dismissal of the Complaint in its entirety pursuant to Rule 12(b)(6). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). To make that determination, the Court must employ the standard of review articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal. A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard will be met if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the pleading standard of Federal Rule of Civil Procedure 8(a), allegations that give rise to the mere possibility of unlawful conduct will not do. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557.

Claims brought pursuant to Exchange Act § 10(b) and the statute's implementing regulation, SEC Rule 10b-5, are subject to certain heightened pleading requirements under the PSLRA. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 320-21 (2007) (noting that prior to the enactment of the PSLRA, the pleading standard of Rule 9(b) governed the sufficiency of a complaint for securities fraud). The PSLRA mandates that, to survive a motion to dismiss, a complaint must (1) "specify each statement alleged to have been misleading, the

13

reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1) & (2); 15 U.S.C. § 78u-4(b)(3)(2) ("In any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of [15 U.S.C. §§ 78u-4(b)(1) & (2)] are not met.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Tellabs, 551 U.S. at 322. In that regard, the Third Circuit has held that a district court may take judicial notice of documents "integral to or explicitly relied upon in the complaint," SEC filings, and stock price data. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (quoting Burlington Coat Factory, 114 F.3 at 1426).

### B.     Securities Fraud Claim Under § 10(b) of the Exchange Act

Under § 10(b) of the Exchange Act, a person or entity may not "use or employ, in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations." 15 U.S.C. § 78j(b). SEC Rule 10b-5(b), in turn, makes it unlawful to "make any untrue statement of material fact or to omit to state a material fact in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b)(2). The Supreme Court has recognized a private cause of action for damages sustained as the result of a violation of Section

10(b) and Rule 10b-5 and held that such claim requires a plaintiff to establish the following six elements:

   (1) a material misrepresentation or omission;

   (2) scienter, i.e., a wrongful state of mind;

   (3) a connection with the purchase or sale of a security;

   (4) reliance, also known as "transaction causation" in cases involving public securities markets;

   (5) economic loss; and

   (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.

Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); see also In re Aetna Inc. Sec. Litig., 617 F.3d 272, 277 (3d Cir. 2010).

  Defendants challenge three elements of Plaintiff's Rule 10b-5 claim: material misrepresentation or omission; scienter; and loss causation. The Court agrees that the Complaint fails to allege a false statement or misleading omission of material fact, as required by the PSLRA. As the failure of this element by itself warrants dismissal of the Rule 10b-5 claim, the Court does not reach the sufficiency of the other elements challenged by Defendants in this motion.

  The gravamen of the instant action is that Weibo misled investors regarding its compliance with Chinese regulations which required a license to engage in the transmission of online audio-video material. The alleged fraud, however, does not arise from any false representations to the public that Weibo in fact possessed the required license or that Defendants concealed Weibo's lack thereof.  Indeed, the Complaint acknowledges that "Weibo consistently

stated throughout the Class Period that it **did not** hold an audio/video program transmission license." (Compl., ¶ 7) (emphasis in original). Rather, Plaintiff alleges that Weibo deceived investors by telling them that it used the websites of license-holding third parties to deliver content posted to the Weibo platform, which had the effect of falsely assuring the public that Weibo's internet transmission operations were lawful under PRC regulations. Weibo, the Complaint avers, opted to circumvent the license requirement of Circular 56 knowing that is third-party delivery "solution" was not permissible under Chinese Law.

Before examining the sufficiency of the pleading under Rule 12(b)(6) and the PSLRA, the Court must clarify the subject of its analysis, that is, the exact public communication identified by the Complaint as constituting Defendants' alleged false assurance that Weibo was complying with PRC law. This is important because the securities fraud claim pled in the Complaint is *not* grounded in any affirmative statement made by Defendants in which they assert that Weibo was exempt from Circular 56 and/or the AVPT License requirement. Nor is it grounded in an affirmative statement in which Defendants assert that the third-party delivery of content brings Weibo into compliance with the AVPT License regulations. Instead, the basis for the alleged fraud, according to the Complaint, consists of an allegedly false impression created by Weibo's juxtaposition of two statements: the disclosure that Chinese law requires an AVPT License to transmit programs followed by the disclosure that Weibo, while not qualified to obtain a license itself, routes programs through license-holding third-party websites. Taken together, Plaintiff alleges in the Complaint, these statements

> were materially misleading because they created the false impression that Weibo was complying with PRC regulations concerning the audio/video program transmission license. By representing that the content on Weibo originated through third-party websites, Defendants indicated to investors that Weibo was not at risk of violating Circular 56. In reality, Weibo was violating Circular 56 by routing content through third-parties instead of

16

> holding the license itself. Defendants' statements omitted material
> information about Circular 56, namely that it applied to Weibo and that
> Weibo was operating in violation of the regulation.

(Compl., ¶ 54.)  Articulating the alleged wrongdoing in a slightly different manner, Plaintiff

alleges elsewhere in the Complaint that Defendants' statements were materially misleading for

their "failure to disclose a true and accurate picture of Weibo's compliance with PRC

regulations."  (Id., ¶ 99.)

  The Court notes that, at a number of points in the Complaint, Plaintiff appears to

paraphrase or make conclusory statements about the contents of the SEC filings at issue. For

example, the Complaint avers that "Defendants engaged in a reckless gamble with investors by

assuring the public that a permit was not required, even though they knew the opposite was more

than likely true . . . ." (Id., ¶ 8.) Additionally, the Complaint alleges that Weibo's SEC filings

"falsely stated that Weibo was not required to have a license." (Id., ¶¶ 53, 57, 63, 69.) The

problem with these allegations is that Plaintiff never identifies where in the SEC filings such

assertions were made. Nor does the Complaint quote, cite, or reference some other public

communication by Weibo, besides the SEC filings, that contain statements which would provide

factual support for these allegations. In its own review of the pertinent sections of the SEC

filings referenced in the Complaint and submitted by the parties, the Court has not discovered

any statements even remotely similar to the language used in the allegations charging that Weibo

told the public that it "was not required to have a license." The Complaint's various allegations

of this nature lack a factual basis and, indeed, seem to be no more than mere hyperbole used to

bolster Plaintiff's "false impression" theory of fraud.

  In short, neither the Complaint nor Plaintiff's brief in opposition to the motion to dismiss,

directs the Court's attention to any part of the SEC filings which make any affirmative

representations as to the legality or propriety of Weibo's regulatory compliance concerning the AVPT License. Allegations that charge a defendant spoke in an untrue or misleading manner but do not allege that the defendant actually made those statements or omissions fail to "show" that the plaintiff is entitled to relief and therefore do not satisfy Rule 8(a)'s pleading standard, much less the heightened requirement of the PSLRA. Iqbal, 556 U.S. at 679; 15 U.S.C. §§ 78u-4(b)(1) (directing that a Rule 10b-5 claim must "specify each statement alleged to have been misleading"). A securities fraud claim based on purported statements that a defendant did not actually make fails, necessarily, to state a claim upon which relief can be granted. City of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 172 (3d Cir. 2014) (affirming dismissal of a Rule 10b-5 claim based on statements that were not made by defendants because "[d]efendants cannot be held responsible for statements they did not make.") To the extent Plaintiff's Rule 10b-5 claim is based on alleged statements that Defendants did not make, it is clearly deficient under the pleading standards of both the Federal Rules of Civil Procedure and the PSLRA.

Having clarified the contours of Plaintiff's securities fraud claim, the Court turns to the contention that Defendants violated Rule 10b-5 by creating a false impression regarding Weibo's compliance with PRC regulations imposing the AVPT License requirement. Rule 10b-5 "presents two bases for liability: (1) '[t]o make any untrue statement' or (2) 'to omit to state a material fact necessary in order to make the statements made . . . not misleading.'" United States v. Schiff, 602 F.3d 152, 167-168 (3d Cir. 2010) (quoting 17 C.F.R. § 240.10b-5(b)). In essence, Plaintiff's claim posits that, in juxtaposing two literally true statements—Weibo did not hold an AVPT License but transmitted its programs through third-party websites that did—Defendants implicitly made an untrue statement that Weibo's conduct was lawful. Plaintiff's theory fails because the implication at the core of the securities fraud claim is not based on a plausible

reading of Weibo's public statements and disclosures. This is so because the statement on which Plaintiff focuses, regarding third-party delivery of programs, cannot be viewed in isolation from the rest of the respective document in which it is set forth. It is axiomatic that, when analyzing whether a complaint sets forth misleading statement or omission actionable under Section 10(b) and Rule 10b-5, a court must "examine statements in the full context of the documents of which they are part." Edinburgh, 754 F.3d at 169 (citing Burlington Coat Factory, 114 F.3d at 1426). The SEC filings at issue in this lawsuit contain extensive and unambiguous information which renders implausible and even contradicts the misrepresentation Plaintiff maintains can be inferred from the juxtaposed statements concerning Weibo's lack of the AVPT License and delivery of programs through licensed third parties. From the very start of the Class Period, beginning with the 2014 Prospectus, Weibo's SEC filings expressly state the following:

- PRC rules, promulgated in 2004, mandate that a government-issued AVPT License must be obtained by "anyone" wishing "to engage in internet broadcasting activities"

- Circular 56, a PRC regulation issued in 2007, restricts eligibility for the AVPT License to companies that are wholly state-owned or state controlled: "Circular 56 reiterates the requirement . . . that online audio/video service providers must obtain an internet [AVPT] license from [the government]" . . . and "requires all online audio/video service providers to be either wholly state-owned or state-controlled companies"

- An exemption to Circular 56's eligibility restriction will not be granted to online providers established after the rule was issued

- Weibo is "not qualified" under Circular 56 to obtain the AVPT License because it is not wholly state-owned or state-controlled

- Weibo cannot avail itself of the exemption carved out of the AVPT License requirement because it did not begin operation prior to the issuance of Circular 56

- Although the current legal regime bars Weibo from obtaining the AVPT License, Weibo "plans to apply for an [AVPT License] when feasible"

- Failure to obtain the AVPT License exposes an online provider to various penalties, including the imposition of fines, seizure of equipment, and suspension of online audio/video services

Significantly, these disclosures are not scattered throughout the filings, leaving it to an investor to cobble together the information. The statements appear all together in the relevant documents, set forth under the heading "Regulations on Broadcasting Audio/Video Programs through the Internet." It is in this same section, immediately following all of the above-listed disclosures, that Weibo states that it currently delivers programs posted to the Weibo platform through license-holding third party websites. Read in context, Weibo's disclosure that it delivers content through license-holding third-parties cannot plausibly imply that Weibo's method of operating complies with the governing regulations concerning the AVPT License requirement or, to put it differently, obviates Weibo's need to obtain its own license.

Moreover, the pertinent information appears not once but twice in each and every one of the Class Period SEC filings. The statements are also grouped together under the bold-print heading "Risks Related to Doing Business in China" and the subheading "We may be adversely affected by the complexity, uncertainties and changes in PRC licensing and regulation of internet businesses." Broadly, Weibo warns "we cannot assure you that we have obtained all the permits or licenses required for conducing our business in China . . . ." Specifically, as to the AVPT License requirement, the SEC filings pointedly state that "companies engaging in internet

broadcasting activities must first obtain an [AVPT License]," and that Weibo does not have the license but plans to apply for it when feasible. Again, Weibo discloses its risk exposure for operating without the AVPT License: "If we fail to obtain such licenses . . . in a timely manner or at all, we could be subject to liabilities, penalties and operational disruption." It is in this context that, under the "Risks" section of the SEC filings at issue, Weibo states that "[c]urrently, all the audio/video programs posted on our website are delivered through third-party websites." Moreover, this section of the SEC filings expressly cross-references the section related to the internet broadcasting regulations, discussed at length above. Taking the relevant disclosures made in the SEC filings as a whole, no reasonable investor could interpret Defendants' statement as creating a "false impression" that Weibo could operate legally in the PRC without the AVPT License.

The PSLRA places the burden on a securities fraud plaintiff "to specify . . . . the reason or reasons why the statement is misleading." 15 U.S.C. §§ 78u-4(b)(1). Plaintiff's Complaint, which itself quotes the pertinent sections from each of the SEC filings, fails to allege facts that provide a plausible basis for connecting Defendants' disclosures with the misleading message Plaintiff maintains was communicated to investors. Defendants' repeated, clear and comprehensive communication on the subject of the government-mandated AVPT License belies any assertion by Plaintiff that Defendants' statements conveyed false assurances that its online transmission of programs through third parties complied with PRC regulations.

As set forth earlier in the Opinion, the Third Circuit has held that a Rule 10b-5 claim can be misrepresentation-based or omission-based. Plaintiff's argument in support of the viability of the claim also invokes the latter basis. In the brief in opposition to the motion to dismiss, Plaintiff argues that the SEC filings misled investors by omitting material information about "the

risks associated with Weibo's attempt to circumvent PRC laws by posting content through third-party websites." (Opp'n Br. at 14.) Plaintiff maintains that Defendants' disclosures at best amounted to a "half-truth" because, having chosen to tell the public that it routed content through third-parties holding the necessary AVPT License, Weibo should have stated "that the third-party solution was also illegal." (Id. at 15.) To the extent the securities fraud alleged in the Complaint is omissions-based, the claim is unavailing for the same reasons that Plaintiff's disclosures fail to create a false impression.

It is well-established that "[a]bsent a duty to disclose, silence is not fraudulent or 'misleading under Rule 10b-5.'" Schiff, 602 F.3d at 162 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988)); see also Burlington Coat Factory, 114 F.3d at 1432 ("Except for specific periodic reporting requirements[,] . . . there is no general duty on the part of a company to provide the public with all material information."). A duty to disclose under Rule 10b-5 may arise in three circumstances: "when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure." Oran v. Stafford, 226 F.3d 275, 285-286, (2000). An omission may constitute a violation of Rule 10b-5 only where there is "'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 38 (2011) (quoting Basic, 485 U.S. at 231-232); see also Oran, 226 F.3d at 282 (holding same). Here, Plaintiff argues that Defendants misled investors by failing to disclose that the "sub-contracting arrangement" with third parties for delivery of Weibo content was illegal. (Opp'n Br. at 8.) However, in light of the abundant disclosures made by Weibo in the Class Period SEC filings, no reasonable investor could have viewed this omission as significantly altering total mix of information concerning Weibo's status

vis-à-vis the AVPT licensing regulations and the potential consequences for remaining unlicensed.

Indeed, the potential consequences became a reality upon the issuance of the SAPPRFT notice in the PRC. In the notice, the SAPPRFT, the PRC government agency with authority over internet broadcasting activities, called for local authorities to suspend Weibo's operations for failure by Weibo to hold the AVPT License. The risk that materialized when the SAPPRFT notice was issued on or about June 22, 2017 – suspension of Weibo's operations for lack of the AVPT License – was precisely the risk disclosed in Defendants' various SEC filings.

Finally, Defendants also attack the first element of the securities fraud claim based on the assumption, which they do not concede, that the challenged statements might be construed as expressing Weibo's opinion that it was acting in compliance with PRC law. Plaintiff rejects such an interpretation as the basis for the alleged securities fraud. The opposition brief states that "Defendants statements cannot be identified as opinions because they involve statements of present fact – that Weibo operates legally under the PRC law via transmission through third-party websites." (Opp'n Br. at 20.) Nevertheless, the Court addresses the opinion-based theory of wrongdoing because the parties have in fact engaged in substantial argument concerning this alleged basis for the claim.

Defendants contend that if Weibo's disclosures somehow communicated their belief that Weibo was exempt from the AVPT license requirement, such a belief would be a non-actionable pure statement of opinion given Defendants' ample disclosures and the publicly-available regulations. Plaintiff counters that assuming Defendants' statements are understood to express an opinion, the opinion is "actionable because Defendants omitted then-existing facts contradicting the basis for their public statements." (Id. at 20.) The Court finds that, if the disclosures amount

to an opinion statement concerning Weibo's compliance with Circular 56, the statement neither misrepresents nor omits facts underlying the opinion and is therefore not actionable under the <u>Omnicare</u> standard.

In <u>Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund</u>, the Supreme Court held that a sincere statement of pure opinion does not constitute an actionable misrepresentation or omission of fact, even if the belief is later proved to be wrong. 135 S. Ct. 1318, 1325-28 (2015) (reaching this holding in the context of Securities Act § 11, which, using language similar to § 10(b), forbids material misstatements and omissions by an issuer of securities in its registration statements). As a corollary to this holding, the <u>Omnicare</u> Court also recognized that certain opinion statements may be actionable. <u>Id.</u> at 1326. The Court held that an opinion could constitute a misrepresentation of fact or misleading omission if (1) statement expresses an opinion not actually held by the speaker (subjectively false) and contains an embedded assertion of incorrect facts (objectively false) or (2) the speaker omits facts concerning the basis for the opinion and "those facts conflict with what a reasonable investor would take from the statement itself." <u>Id.</u> at 1326, 1329; <u>see also</u> <u>City of Edinburgh</u>, 754 F.3d at 170 ("Opinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis.") (citing <u>In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.</u>, 543 F.3d 150, 166 (3d Cir. 2008)); <u>In re Hertz Global Holdings, Inc. Sec. Litig.</u>, 2017 U.S. Dist. LEXIS 65156 at *37 (D.N.J. Apr. 27, 2017) (summarizing <u>Omnicare</u>'s holding regarding circumstances in which an opinion may be actionable under securities laws).

Plaintiff sets forth no factual allegations that satisfy any of the <u>Omnicare</u> conditions. As discussed, given the extensive information provided in Weibo's SEC filings about the AVPT License regulations—including the breadth of their applicability ("anyone who wishes to engage

in internet broadcasting activities"); Weibo's current lack of license ("Weimeng is not qualified to obtain an internet [AVPT] license under the current legal regime"); Weibo's intention to obtain one when eligible ("Weimeng plans to apply for an internet [AVPT] license when feasible to do so"); and the consequences for failing to obtain an AVPT License ("if we fail to obtain such licenses . . . in a timely manner or at all, we could be subject to liabilities and penalties")— no plausible reading of the Complaint and its incorporated documents could support an embedded factual statement in the opinion concerning the lawfulness of third-party transmission and/or Weibo's exemption from the license requirement. Nor is there any basis in the Complaint for concluding that Weibo failed to disclose facts regarding Weibo's knowledge of what the regulatory scheme permits and that an investor would understand those facts as conflicting with the opinion.

For the reasons set forth above, the Court finds that Plaintiff's claim for violation of Rule 10b-5 does not sufficiently plead the first element of that claim. Moreover, it does not appear that Plaintiff could amend the Complaint to add allegations that would cure this deficiency. The parties have supplied the Court with the pertinent sections of the SEC filings on which the securities fraud claim is based, and Plaintiff does not identify other documents or sources that give rise to alleged misrepresentations and omissions by Weibo. For the reasons discussed, the Court has already found that, when read in context, the SEC filings containing the purportedly false and misleading statements identified by the Complaint fail to plausibly support Plaintiff's claim. Accordingly, the securities fraud claim under Section 10(b) of the Exchange Act will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and leave to amend will not be granted, as it appears that amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a

deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

### C. Section 20(a) Control Person Claim

Section 20(a) of the Exchange Act "creates a cause of action against individuals who exercise control over a 'controlled person,' including a corporation, that has committed a violation of § 10(b)." Institutional Investors Group v. Avaya, 564 F.3d 242, 252 (3d Cir. 2009); see also 15 U.S.C. § 78t(a). A Section 20(a) claim thus imposes secondary liability on the controlling person for the wrong committed by the one who is controlled. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 284–85 (3d Cir. 2006). Plaintiff's control person claim against Wang and Yu is predicated upon the primary liability of Defendant Weibo under Exchange Act § 10(b). Defendants argue that because the Complaint fails to state an actionable § 10(b) violation, the control person claim necessarily fails to state a claim upon which relief may be granted. Defendants are correct. Id. at 285; Shapiro v. UJB Financial Corp., 964 F.2d 272, 279 (3d Cir.1992) (holding that "once all predicate § 10(b) claims are dismissed, there are no allegations upon which § 20(a) liability can be based."). Accordingly, the control person claim will also be dismissed for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. The Complaint will be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). An appropriate Order will be filed.

____s/ Stanley R. Chesler____
STANLEY R. CHESLER
United States District Judge

Dated: June 6, 2018